**Michael Wayne RANKIN, Sr., Appellant,**

v.

**Penny CRISWELL, Individually; and Penny Criswell, on Behalf of Angelica Jessie and Michael Rankins, Jr., Appellee.**

No. 2007–CA–002486–ME.

Court of Appeals of Kentucky.

Dec. 31, 2008.

Mark Hyatt Gaston, Louisville, KY, for Appellant.

No brief filed for Appellee.

Before LAMBERT, STUMBO, and THOMPSON, Judges.

*OPINION AND ORDER*

THOMPSON, Judge.

Michael Rankin, Sr. appeals from a domestic violence order (DVO) entered against him by the Jefferson Family Court which precludes him from having any contact with his former wife, Penny Criswell, and their two minor children. We agree with his claim that the family court failed to conduct a full evidentiary hearing as required by our domestic violence statutes and, therefore, remand the case for a hearing.

The record before this court includes thirty pages of court documents and a tape of the approximately seven minute DVO hearing. From the record, we recite the facts.

In April 2005, Penny filed a domestic violence petition against Michael alleging that Michael had physically threatened the children. According to Penny's affidavit filed with the petition, the children resided with Michael from August 2004 until March 2005. The court's notations on the DVO entered in 2005 indicate that the petition was dismissed based on the condition that the "parties cooperate."

On October 19, 2007, Penny filed a second domestic violence petition wherein she alleged the following:

THE RSP IS PETR'S EX HUSBAND PTYS HAVE BEEN DIVORCED 6 YRS. PTYS HAVE 2 CHILDREN IN COMMON 13, 10 YRS. OLD. ON 10/19/07 THE PTR'S MOTHER INFORMED THE PTR THAT THE PTYS 13 YEAR OLD DAUGHTER WAS MOLESTED BY THE RSP THE MNR'S FATHER WHEN THE MNR WAS APROX. 5–6 YRS OF AGE. THE MNR TOLD A FRIEND AND WORD GOT BACK TO THE PTR'S MOTHER. THE PTR TALKED W/ THE COUNSEL AT THE SCHOOL WHERE THE MNR'S FRIEND ATTENDS. COUNSELOR TALKED SEPARTLEY W/ THE PTR AND THE MNR'S FRIEND. THE PTR WENT TO THE MNR'S SCHOOL AND TOOK THE MNR OUT OF SCHOOL AND LUNCH TO TALK W/ THE MNR. THE MNR OPENED UP ENOUGH TO INFORM THE PTR WHAT TOOK PLACE. THE PTR WAS INFORMED BY CRIMES AGAINST CHILDREN TO FILE AN EPO. THE PTR WANTS THE RSP TO HAVE NO CONTACT W/PTYS CHILDREN.

An emergency protective order (EPO) was entered, and a hearing was scheduled for October 29, 2007.

Both parties appeared at the hearing without legal representation. The family court placed each party under oath and then addressed Penny. The allegations in the petition were read aloud by the court; the court, however, did not admit the petition as evidence nor did the court question Penny as to whether the allegations were true.

Following its brief colloquy with Penny, the court silently read two separate dependency case files pending in the family court. Because the court did not read any portion of the files aloud and the files were not included in the DVO file, this court is not aware of their content. However, after perusing the files, the court inquired whether Michael desired to make any statement, to which he responded with a denial of having engaged in any harmful

conduct toward his children. The court then asked if Michael recalled that in 1998 he pled guilty to a misdemeanor for the sexual abuse of his daughter. Michael responded that he had entered an *Alford* plea.

The court then directed a final question to Penny; specifically, it inquired as to why the facts alleged in the petition were "new news." Penny began to explain that her daughter repressed the alleged sexual abuse but, before she completed her sentence, the court interrupted and no further details were revealed. The court then stated: "Here's the deal Mr. Rankin. I don't know whether or not you did it or not but you already pled guilty to sexual abuse of this child." After again making reference to the dependency files, the court stated that an order would be entered prohibiting contact with the children "until the criminal matter is resolved or until the order expires."

A DVO was entered on October 27, 2007. Consistent with the court's oral pronouncement, it prohibited any contact between the children and Michael and further extended the no contact provision to Penny. Unlike the court's verbal reference to resolution of the criminal matter, the DVO states it is effective for a period of three years.

Michael argues that the court did not conduct a full evidentiary hearing on the merits of the DVO petition and, as a result, there was insufficient evidence upon which to enter the DVO. Penny did not file a responsive brief.

The domestic violence statutes are contained in KRS 403.715 to 403.785. They were enacted for the purpose of permitting victims of violence and abuse to "obtain effective, short-term protection against further violence and abuse in order that their lives will be as secure and as uninterrupted as possible[.]" KRS 403.715. Do-

mestic violence is defined as "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]" KRS 403.720(1).

■ A DVO proceeding is a civil matter that requires that the court find from "a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur[.]" KRS 403.750(1). Under the preponderance standard, the evidence must establish that the alleged victim was more likely than not to have been a victim of domestic violence. *Wright v. Wright,* 181 S.W.3d 49, 52 (Ky.App.2005).

Although domestic violence proceedings are not criminal matters, the significant consequence for both parties was artfully explained in *Wright* and is worthy of repeating:

> If granted, it may afford the victim protection from physical, emotional, and psychological injury, as well as from sexual abuse or even death. It may further provide the victim an opportunity to move forward in establishing a new life away from an abusive relationship. In many cases, it provides a victim with a court order determining custody, visitation and child support, which he or she might not otherwise be able to obtain. The full impact of EPOs and DVOs are not always immediately seen, but the protection and hope they provide can have lasting effects on the victim and his or her family.
>
> On the other hand, the impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator. To have the legal system manipulated in order to "win" the first

battle of a divorce, custody, or criminal proceeding, or in order to get "one-up" on the other party is just as offensive as domestic violence itself. From the prospect of an individual improperly accused of such behavior, the fairness, justice, impartiality, and equality promised by our judicial system is destroyed. In addition, there are severe consequences, such as the immediate loss of one's children, home, financial resources, employment, and dignity. Further, one becomes subject to immediate arrest, imprisonment, and incarceration for up to one year for the violation of a court order, no matter what the situation or circumstances might be.

*Id.* at 52. The court sympathized with the family courts and the heavy dockets under which they must perform their duties and the need to operate with speed and efficiency. Nevertheless, it cautioned, the courts are required to provide each party with a full evidentiary hearing. *Id.* at 53.

This case presents a fact situation strikingly similar to that in *Wright.*[1] Nathan Wright's wife, Jamie, filed a DVO petition. The court granted an EPO and scheduled a hearing. However, on the hearing date, the court only heard arguments from counsel and, in reliance on its extraneous knowledge that a 911 call had been made to the residence and that a neighboring county had removed the parties' children from the parties' custody, granted the DVO. The appellate court held that the trial court's failure to question the parties and its reliance on extrajudicial evidence necessitated reversal.

 We likewise hold that Michael was not afforded a full evidentiary hearing. There was absolutely no testimony or other evidence in support of the petition, and none was solicited by the court. Instead, the court relied solely on the contents of the petition and the records in the dependency cases referred to during the hearing.

 A petition may support an EPO; however, a DVO has significant long-term consequences for both parties and cannot be granted solely on the basis of the contents of the petition. Penny was not asked whether the statements contained in the petition were accurate, nor did she testify in regard to the alleged sexual abuse. Moreover, the allegations in the petition are vague as to when the alleged abuse occurred, the nature of the abuse, and whether it is the same conduct that led to Michael's prior conviction.

 Finally, we emphasize that a DVO petition is subject to the same evidentiary standards as other forms of evidence. *See Dawson v. Commonwealth,* 867 S.W.2d 493, 496–497 (Ky.App.1993). Unless an exception applies, hearsay contained in the petition cannot be considered as evidence. The court erroneously relied on Penny's petition, which contains hearsay statements allegedly made by the child that were repeated to Penny by a third-party.

Absent the contents of the petition, the only knowledge the court had regarding the parties was gained from the dependency files. The files were read silently by the court without admitting them as evidence and without informing the parties as to their contents. The court erred when it considered the files which were not evidence and to which Michael had no opportunity to examine or refute.

---

1. *Wright* involved two separate appeals that presented identical issues of law. The fact situation presented by appeal 2005–CA– 000540–ME, filed by Nathan J. Wright, is similar to the present case.

We are cognizant of the family court's onerous docket and the dilemma when the parties are unrepresented by counsel. However, because of the impact of a DVO on the family, the court must provide a full evidentiary hearing conducted in compliance with statutory and court rules.

The hearing conducted in this case was woefully inadequate to meet the full evidentiary hearing required; therefore, we must remand the case for further proceedings. On remand, the court shall question the petitioner under oath as to the allegations in the petition and shall give Michael the opportunity to respond. Because a DVO can be entered only after the court finds that there is an immediate and present danger of domestic violence, at a minimum, the statute requires the following: (a) specific evidence of the nature of the abuse; (b) evidence of the approximate date of the respondent's conduct; and (c) evidence of the circumstances under which the alleged abuse occurred. After conducting the evidentiary hearing, the court must then decide whether, under the preponderance of the evidence standard, domestic violence has occurred and may occur again. As to the duration of the order, it is not dependent on the result of the criminal matter. The standard of persuasion in a DVO is not the heightened criminal standard of beyond a reasonable doubt. As a result, acquittal on a criminal charge arising from domestic violence does not preclude the effectiveness of a DVO.

Based on the foregoing, the DVO is remanded for a hearing consistent with this opinion. However, because the DVO serves a significant purpose and for the protection of the children and the petitioner, IT IS HEREBY ORDERED that the DVO shall not be vacated until forty-five (45) days following the issuance of this Opinion in order to allow the family court time to conduct necessary proceedings.

ALL CONCUR.