RENDERED: JANUARY 15, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0699-ME

JASON FOWLER                                                                    APPELLANT

v.          APPEAL FROM ANDERSON CIRCUIT COURT
            HONORABLE S. MARIE HELLARD, JUDGE
            ACTION NO. 20-D-00013-001

LESLEY N. JONES                                                                  APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE: JONES, LAMBERT, AND K. THOMPSON, JUDGES.

LAMBERT, JUDGE: Jason Fowler has appealed from the Anderson Circuit

Court's entry of a domestic violence order (DVO) upon a petition by Lesley Jones.

Because we agree that substantial evidence does not support the court's conclusion

that a DVO was justified, we reverse.

Jones filed a petition seeking an order of protection against Fowler on

behalf of herself and her minor daughter with the Anderson Circuit Court on

February 17, 2020. In support of her motion, Jones stated that two days prior to

that date, Fowler had engaged in the following behaviors:

> Mr. Fowler has been sending texts consistently since January 26, 2020 and also calling my cell phone.
>
> On January 30, 2020 I seen him outside of my job. I did nothing.
>
> On February 1, 2020 I informed him I have notified the authorities and to stop. I was hopeful it had ended. On February 14, 2020 he responds. On Feb. 15, 2020 I again asked him to stop.
>
> On February 15, 2020 my daughter and I are driving to Lexington to do some shopping.
>
> On February 15th, as we are driving, Fowler passes up my vehicle and I immediately get upset. I took a picture of his vehicle to document he is again in the same place I am. I did nothing else.
>
> On February 16, 2020 at 4:34 am I get another long text and this one is:
>
>> "if you (pertaining to me) ever take a picture of my (his) vehicle again, …"
>>
>> "I (him) will switch in 4high and ram you so hard Jesus himself will not recognize your (mine) vehicle."
>
> I did call the police station Feb. 16, 2020 at appox. 5:14 pm. Because after working another one of my jobs at Kroger, I had to constantly look over my shoulder and consistently check on my daughter who was at home. I'm tired of being scared!!

> Mr. Fowler texts make no sense half the time and I believe him to be on drugs or losing his mind. Either I feel to be dangerous.

Jones requested the court to restrain Fowler from committing further acts of violence, from any unauthorized contact or communication with her or her daughter, from going within a specified distance of her place of employment, and from damaging any of her property. The court issued a summons to Fowler, and he retained counsel. The court held a brief hearing on February 25, 2020, where Jones stated that she and Fowler had previously been in a dating relationship six years earlier. She said they had never lived together, and they had maintained a random, ongoing friendship. The court passed the matter to give Fowler time to review the text messages Jones referenced in her petition.

The court held a hearing via conference call due to COVID-19 restrictions on April 28, 2020. During her testimony, Jones confirmed that she and Fowler had been in a dating relationship and added that they had lived together briefly in 2014 for two or three months. She detailed Fowler's angry behavior at the end of their relationship, and she related an incident in June 2019, when he came to her residence to ask her why she had not responded to his calls. Jones then began been receiving phone calls and text messages from Fowler in January 2020, although she had not sought any protection for the June and January contacts. Fowler had not bothered her since she filed the petition, despite the fact

that an emergency protective order had not been entered. However, Jones still wanted an order of protection because she had gotten a letter asking her to "drop it" from Fowler's attorney and was worried things would continue as they were if an order was not entered. She denied that Fowler had committed any acts of violence while they were living together and confirmed that he had never physically touched her in violence. The only allegation of violence was the one he made by text on February 15th about hitting her car. She said she found his text messages to be threatening.

Jones stated that her relationship with Fowler had been cordial. She helped with his mother at times in 2016, when she took her to rehab and picked up prescriptions for her. And she helped with his mother in 2019 when he was out of the country. She saw Fowler maybe once a year or once a year and a half.

Regarding the series of text messages she had received from Fowler, Jones admitted that she may have inadvertently gotten text messages that were meant for someone else. She went on to testify that she had seen Fowler outside of her work in Frankfort in January. This scared her, and she did not know what he was doing. Jones decided to go to his house in late January after she answered a phone call from him from the phone of a person she knew. She was not afraid to go to his door by herself because there was a person in the car with her and it was during daylight hours. But she did not want to do this because it was a

confrontation. As to Fowler passing her on the expressway, Jones said that she did not know they were on the same road until he passed her vehicle. Jones thought it was no longer a coincidence that Fowler kept showing up in places where she was. She had not filed any criminal charges against him, and there had been no contact from him since the petition was filed. After Jones sent Fowler a text to stop communicating with her, his communication attempts stopped for two weeks until he contacted her on Valentine's Day. He sent the message on February 16th that he was going to ram her car if she took another photo of his car. She took a photo of his car while they were stopped at a stoplight.

Fowler also testified at the hearing. He denied that they had lived together officially. No acts of violence happened when they were dating. Since the breakup six years ago, he and Jones had remained close friends. He said she was honest and that she was telling the truth as she knew it. He trusted Jones to check on his mother when he was out of town, and she knew the details of his family issues. Fowler explained that he was having issues with the SIM card on his phone, which caused him to send Jones messages that were intended for other people. Some messages were directed to Jones because Fowler needed her to check on his mother while he was away. He had not contacted Jones since she filed the petition.

Fowler went on to testify about Jones's visit to his home in January and other incidents. Jones went to Fowler's door by herself, and he invited her in to call from his mother's phone to see what showed up on her phone in order to explain his phone issues. Fowler then discussed the trip to Lexington when he passed Jones on US 60. He was on his way to see his mother at the hospital. He did not see Jones until she was on his bumper at a red light taking a photo of his vehicle with her phone. He looked back and saw her doing this. Fowler explained that he was angry that Jones would not help him even after telling her he had made a mistake. He was also angry that his mother was dying; she passed away in late February. Fowler thought the message asking him to stop contacting Jones and the message stating the police had been contacted were from his brother-in-law.

After hearing the testimony, the court made findings on the record that were memorialized in the three-year DVO entered that day:

> Never "physically touched" her; but threats [sic] to "ram"
> her vehicle, etc., have caused her to fear for her safety.
> Saw him outside her work place in Jan. 2020, and was
> afraid. Went to his home Jan 26, 2020 to ask him to stop;
> but it did not stop. In February is when he passed her on
> US 60 on way to Lexington. He just keeps popping up in
> places where she is. She's "honest as the day is long,"
> per the Respondent.

These incidents, the court found, caused Jones to reasonably fear for her safety. In the order, the court found that Jones had established that domestic violence or abuse had occurred and may occur again and restrained Fowler from contacting

Jones or damaging her property. It further ordered him to stay 500 feet away from her and prohibited him from going to her place of employment in Lawrenceburg. The court ordered Fowler to complete a domestic violence assessment and to comply with all recommendations, and he was ordered to surrender all weapons. The court believed Jones's testimony that she and Fowler had lived together in the past and therefore entered a DVO instead of an interpersonal protection order. This appeal now follows.

On appeal, Fowler contends that the circuit court committed clear error when it found that he had committed domestic violence and that it was likely to occur again.

In *Clark v. Parrett*, 559 S.W.3d 872, 875 (Ky. App. 2018), this Court set forth the statutory definition of domestic violence and abuse and the appropriate standards of proof and review:

> "Domestic violence and abuse" is defined as "physical injury, serious physical injury, stalking, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]" Kentucky Revised Statutes (KRS) 403.720(1). "Any family member or any member of an unmarried couple may file for and receive protection . . . from domestic violence and abuse[.]" KRS 403.750(1). "Following a hearing . . . if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order[.]" KRS 403.740(1). "Our review in this Court is not whether we

would have decided the case differently, but rather whether the trial court's findings were clearly erroneous or an abuse of discretion." *Gibson v. Campbell-Marletta*, 503 S.W.3d 186, 190 (Ky. App. 2016).

"The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim 'was more likely than not to have been a victim of domestic violence.'" *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007) (quoting *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996)).

Fowler argues that, based on the context of the text messages to Jones, it was not reasonable for Jones to have a fear of imminent physical injury, nor was it reasonable for the court to find that violence and abuse may occur again. He contends that Jones did not meet the statutory requirements as described by this Court in *Rankin v. Criswell*, 277 S.W.3d 621, 626 (Ky. App. 2008):

> Because a DVO can be entered only after the court finds that there is an immediate and present danger of domestic violence, at a minimum, the statute requires the following: (a) specific evidence of the nature of the abuse; (b) evidence of the approximate date of the respondent's conduct; and (c) evidence of the circumstances under which the alleged abuse occurred.

Based upon our review of the record, we agree with Fowler that there is insufficient evidence to support the court's finding that an act of domestic violence and abuse had occurred and may occur again. Jones's fear of imminent physical injury, based upon Fowler's text message that he would ram her vehicle, was not reasonable because it was conditioned on her taking a photograph of his

-8-

car again. Their dating relationship had ended several years prior to the incident at issue in this case, and there was no prior history of violence or threats. They appeared to maintain a friendship over the following years, which included Jones helping with Fowler's mother. And Jones chose to visit Fowler's home alone, while another person remained in the car, to ask him to stop sending her text messages. Finally, there is no support for Jones's belief that Fowler kept "popping up" in places were she was, including her place of employment at a retail store and on the expressway. There is no evidence that Fowler had been stalking her or that these two encounters were anything other than coincidence.

Furthermore, there is no evidence that domestic violence and abuse may occur again, as the court found. We recognize the lack of violence between Jones and Fowler while they were dating or in the years following their breakup, as well as the lack of contact from Fowler after Jones filed the petition in this case, despite the lack of entry of an emergency protection order.

Finally, and although we need not reach this issue, we question whether a DVO was even appropriate based upon the equivocal evidence that Fowler and Jones ever lived together. Although Jones testified at the hearing that they had lived together for a few months six years ago, Fowler denied this, and Jones had initially stated that they had never lived together.

For the foregoing reasons, the DVO entered by the Anderson Circuit Court is reversed.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

JONES, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.


BRIEFS FOR APPELLANT:

Stephen C. Sanders
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Kevin P. Fox
Frankfort, Kentucky