RENDERED: SEPTEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1522-ME

JORDAN C. TREDWAY                                  APPELLANT

|   |   |
|---|---|
| v. | APPEAL FROM HARDIN CIRCUIT COURT<br>HONORABLE M. BRENT HALL, JUDGE<br>ACTION NO. 20-D-00547-001 |

EMILY MEAGHAN MICKELSON;
R.D., A MINOR; AND
J.T., A MINOR                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; MAZE, AND K. THOMPSON,
JUDGES.

MAZE, JUDGE: Jordan C. Tredway appeals the entry of a domestic violence

order (DVO) restraining him: 1) from committing further acts of abuse or threats

of abuse against appellee Emily Meaghan Mickelson and her children; 2) from any

unauthorized contact with Mickelson and her children; 3) from going to or within

500 feet of her mother's residence and the children's schools; and 4) from disposing of or damaging any of the parties' property. In addition, the family court ordered Tredway to complete a mental health evaluation and to surrender all weapons to the Hardin County Sheriff's Office. We affirm.

On October 27, 2020, Mickelson sought an order of protection supported by the following notarized voluntary statement in which she alleged:

> Jordan Tredway began using meth July of 2019 and became abusive towards me and my children. He said he would stop and get help but over the past 2 months it got worse. He would spank my children, confine them to their rooms when he was home. Once, he hit my son [J.T] with his hand in the face causing a nose bleed, that was a month or two ago. He would scream at [J.T.] and [R.D.] and spank them even though I told him I was not okay with it. I left October 15 and since then he has been harassing me and threatened my life saying "If I wanted you dead there would be nothing you could do to stop me." He is watching my current house because he only contacts me when my mother leaves. He has ptsd and severe anger issues. He drew his fist back to hit me a few days before I left. I've seen him become very violent when he's intoxicated such as pistol whipping his best friend during a fight.

The family court subsequently conducted a hearing on Mickelson's petition.

At that hearing, the family court heard evidence from Mickelson, her mother, her brother-in-law, and Tredway. Mickelson testified that she and Tredway had lived together for about a year and a half; that she and Tredway have no children together; and that she is sole custodian of two boys aged ten and five.

-2-

Concerning the behavior that precipitated the filing of her petition for an order of protection, Mickelson stated that Tredway had threatened her life; had pointed both loaded and unloaded guns at her; had alienated her from family and friends; and had frightened her so badly when he drew back his fist to strike her that she urinated on herself. Mickelson also stated that Tredway kept many firearms at the residence and liked to point them at random people. She testified that Tredway threatened her when she tried to leave, continues to harass her at her mother's home, and will not allow her to retrieve her belongings from his residence.

A significant part of Mickelson's testimony focused upon Tredway's excessive punishment of her children despite the fact that she had informed him that she did not approve of his manner of disciplining the children. In particular, she recounted an incident where Tredway hit the five-year-old across the face, bloodying his nose, and stated that on multiple occasions he had left bruises on the children from spanking. She stated that Tredway confined the boys to their room when he was home. Mickelson stated that since she and the boys left Tredway's residence and moved in with her mother, Tredway has been harassing her and is apparently watching the residence because he only contacts her after her mother leaves the house.

Mickelson's mother, Kimberly Patterson, testified that Tredway continues to call Mickelson and stated that her grandchildren are afraid of him.

She noted that the younger child sometimes wets the bed because Tredway had caused him to believe he could not use the bathroom without permission. Mickelson's brother-in-law, Matthew Jones, testified that he and his wife had driven from South Carolina to Elizabethtown to help get Mickelson and the boys away from Tredway. He stated after taking the boys back to South Carolina for a couple of weeks, they noticed a big change in the children's behavior as a result of being away from Tredway. Jones also testified that Tredway had threatened him and the children and corroborated Mickelson's testimony that Tredway had isolated her from family and friends.

Tredway's testimony consisted of a general denial of the allegations against him, stating that they were either patently false or wildly exaggerated. He testified that he had no desire to reconcile with Mickelson and that she had invented her allegations because he had asked her to move out of his home. Tredway stated that he had visited Mickelson at her mother's home only by invitation or to deliver Mickelson's prescription refills and other items that she needed from his home. At the conclusion of the testimony, the family court made findings on the record supporting his conclusion that the testimony portrayed a classic case of domestic abuse, warranting entry of the order at issue in this appeal.

As an initial matter, we note that Mickelson failed to file a brief in this appeal. CR[1] 76.12(8)(c) sets out available sanctions for the failure to file an appellee's brief: 1) accept the appellant's statement of the facts and issues as correct; 2) reverse the judgment if appellant's brief reasonably appears to sustain such action; or 3) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case. The decision as to the imposition of these sanctions is a matter committed to our discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). In *Ellis v. Ellis*, we held that the sanction of confession of error is inappropriate in appeals involving custody and support:

> As a preliminary matter, we note that Theresa has not filed a brief in this appeal. While a party's failure to file a brief may be taken as a confession of error, CR 76.12(8)(c), such a sanction is inappropriate in appeals involving child custody or support. *Galloway v. Pruitt*, 469 S.W.2d 556, 557 (Ky. 1971). Furthermore, the issues presented in this appeal may be decided based upon the law and the undisputed evidence of record.

420 S.W.3d 528, 529 (Ky. App. 2014). We view the principles at work in *Ellis* as applying with even greater force where an order of protection is in issue. We therefore decline to impose any penalty for Mickelson's failure to file a brief and

---

[1] Kentucky Rule of Civil Procedure.

will consider Tredway's arguments for reversal based upon the evidence of record

and applicable statutory and caselaw.

Prior to addressing Tredway's arguments for reversal, we reiterate this

Court's explanation of the DVO process and the standard of appellate review set

out in *Caudill v. Caudill*, 318 S.W.3d 112 (Ky. App. 2010):

> Prior to entry of a DVO, the court must find "from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur. . . ." KRS 403.750(1). The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007). The definition of domestic violence and abuse, as expressed in KRS 403.720(1), includes "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members. . . ." The standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous. CR 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982) (citation omitted). Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994) (citations omitted).

With these principles in mind, we turn to Tredway's arguments for reversal.

Tredway presses three arguments in this appeal: 1) that the family court failed to consider the statutory prerequisites for inclusion of location restrictions in the DVO; 2) that the family court erred in allowing testimony as to events other than those raised in Mickelson's voluntary statement; and 3) that the family court failed to properly weigh Mickelson's self-incriminating testimony. We perceive no reversible error in any of these contentions.

Tredway first maintains argues that the family court erred in failing to consider and address the requirements of KRS[2] 403.740 concerning the imposition of location restrictions as part of the DVO. Subsection (1) of the statute provides:

> (1) Following a hearing ordered under KRS 403.730, if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order:
>
> > (a) Restraining the adverse party from:
> >
> > > 1. Committing further acts of domestic violence and abuse;
> > >
> > > 2. Any unauthorized contact or communication with the petitioner or other person specified by the court;
> > >
> > > 3. Approaching the petitioner or other person specified by the court within a distance specified in the order, not to exceed five hundred (500) feet;

---

[2] Kentucky Revised Statute.

4. Going to or within a specified distance of a specifically described residence, school, or place of employment or area where such a place is located; and

5. Disposing of or damaging any of the property of the parties;

Tredway relies upon subsection (2) of the statute to support his contention that the location restrictions in this case were erroneously imposed:

(2) In imposing a location restriction described in subsection (1)(a)4. of this section, the court shall:

(a) Afford the petitioner and respondent, if present, an opportunity to testify on the issue of the locations and areas from which the respondent should or should not be excluded;

(b) Only impose a location restriction where there is a specific, demonstrable danger to the petitioner or other person protected by the order;

(c) Specifically describe in the order the locations or areas prohibited to the respondent; and

(d) Consider structuring a restriction so as to allow the respondent transit through an area if the respondent does not interrupt his or her travel to harass, harm, or attempt to harass or harm the petitioner.

Despite Tredway's insistence to the contrary, nothing in his argument or the evidence of record permits us to conclude that the family court failed to properly consider the statutory factors prior to imposing the location restrictions.

Review of the statutory factors reinforces our conclusion. First, the family court afforded Tredway ample opportunity to present whatever evidence he chose prior to the entry of the DVO containing the location restrictions. Neither Tredway nor his counsel offered any evidence or argument regarding the restriction from "[g]oing to or within a specified distance of a specifically described residence, school. . ." as provided for in KRS 403.740(1)(a)4. Furthermore, Mickelson's mother's home, where she and the children currently reside, as well as the children's schools, fit naturally within the contemplation of KRS 403.740(2)(b) as "location restriction[s] where there is a specific, demonstrable danger to the petitioner or other person protected by the order." Mickelson's testimony, supported by that of her mother and brother-in-law, focused upon Tredway's physical and mental abuse of the children and the fact that he continues to harass her at her mother's home. Thus, we view the family court's restrictions concerning the residence and the children's schools as falling well within the family court's discretion considering the plain intent of the statute and the evidence adduced at the hearing.

However, the true nature of Tredway's complaint about the location restrictions implicates the dictates of KRS 403.740(2)(d) – that the family court should consider "structuring a restriction so as to allow the respondent transit through an area if the respondent does not interrupt his or her travel to harass,

-9-

harm, or attempt to harass or harm the petitioner." Tredway alleges that the restriction concerning the children's schools forces him to deviate from his normal route to work where he often encounters heavier traffic and delays. Again, Tredway failed to inform the family court of this concern despite having been afforded an opportunity to do so during questioning by his counsel. In addition to his failure to preserve the location restriction issue for review, Tredway's failure to adhere to the requirements of CR 52.04 precludes the relief he seeks from this Court:

> A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.

Not only will this Court refuse to predicate error on issues about which the family court had no opportunity to rule, we do not consider this minor inconvenience as even approaching a basis for disturbing the location restriction regarding the children's schools. We note in this regard that we have previously upheld a restriction from possession of firearms despite the fact that the appellant's employment as a law enforcement officer required the regular possession of a

firearm while on duty.[3]   In any event, nothing precludes Tredway from moving the family court to amend the DVO to accommodate his normal work travel route.

Next, without citation to authority or preservation, Tredway argues that the family court erred in allowing testimony concerning incidents other than those specifically delineated in Mickelson's voluntary statement appended to her petition for an order of protection.  We perceive Tredway's argument as a complaint that the hearing before the family court deprived him of due process of law.  Review of the record dispels that contention.

In the context of domestic violence hearings, due process requires that each party have a meaningful opportunity to be heard. *Wright v. Wright*, 181 S.W.3d 49, 53 (Ky. App. 2005).  A "meaningful opportunity to be heard" implies that the family court will allow "each party to present evidence and give sworn testimony before making a decision."  *Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015).  In *Rankin v. Criswell*, this Court explained that while a petition alone may support the issuance of an EPO, "a DVO has significant long-term consequences for both parties and cannot be granted solely on the basis of the contents of the petition."  277 S.W.3d 621, 625 (Ky. App. 2008).  Review of the hearing conducted in this case confirms that the family court afforded both

---

[3] *Boyle v. Boyle*, No. 2013-CA-000416-ME, 2014 WL 7205670 (Ky. App. Dec. 19, 2014).

-11-

Mickelson and Tredway a meaningful opportunity to be heard. The very purpose of the DVO hearing is to give each party an opportunity to flesh out or dispute the allegations of the petition. And again, Tredway failed to in any way apprise the family court that Mickelson's "barrage of allegations" constituted an unwarranted surprise or deprived him of an opportunity to dispute her allegations. Rather, review of the hearing convinces us that Mickelson's testimony, and that of her supporting witnesses, merely constituted the requisite *evidence* of the allegations in her complaint. We thus find no basis for disturbing the decision of the family court on the basis that Tredway was deprived of a fair hearing.

Finally, Tredway argues that the family court failed to properly weigh the credibility of the witnesses, alleging that Mickelson's testimony constituted first-degree perjury; a violation of KRS 620.030(1), the child abuse reporting statute; or both. We find no error.

Tredway's counsel specifically questioned Mickelson regarding the delay in reporting the abuse of the children alleged in her petition. As noted in Tredway's brief, Mickelson testified that it was her fear of Tredway that caused her failure to timely report the abuse. The family court also heard testimony from Mickelson's mother and brother-in-law that Tredway had isolated her from family and friends. In *Moore v. Asente*, the Supreme Court of Kentucky reiterated and emphasized the well-established concept that:

> due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses **because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court.**

110 S.W.3d 336, 354 (Ky. 2003) (citations omitted) (emphasis added). Because the family court was in the best position to weigh Mickelson's failure to report Tredway's abuse in the context of the evidence adduced at the hearing, and in light of the family court's specific finding on the record that the testimony presented a classic case of domestic abuse, we find no basis upon which we can disturb the family court's assessment as to credibility of the witnesses.

Accordingly, the judgment of the Hardin Family Court is in all respects affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Jordan C. Tredway, *pro se*
Elizabethtown, Kentucky

-13-