RENDERED: AUGUST 1, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1301-ME

MICHAEL WARREN SNYDER                         APPELLANT

                 APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE LAUREN ADAMS OGDEN, JUDGE
                 ACTION NO. 24-D-503477-001

PAIGE MARIE SNYDER                          APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

ACREE, JUDGE: This is an expedited appeal from the Jefferson Circuit Court's October 1, 2024 Domestic Violence Order (DVO) entered against Appellant Michael Snyder in favor of his adult daughter, Appellee Paige Snyder. Pursuant to RAP[1] 31(H)(3)(c), we construe Paige's declination to file a brief in this matter as a confession of error, and we vacate and remand for further proceedings.

---

[1] Kentucky Rules of Appellate Procedure.

# BACKGROUND

Paige filed her petition in September 2024, alleging that in August 2024, Michael was "verbally abusive and manipulating and stalking me over the phone even after he kicked me out and has been doing it almost every day." (R.[2]1.) Paige then went on to allege a lengthy history of past abuse at Michael's hands, beginning "around the age of three." *Id.* With respect to more recent allegations of unwanted behavior directed towards her, Paige concluded: "After all that I told him to leave me alone and he still continues to contact me through family and different accounts through social media and even has showed up randomly during a job interview I was trying to set up and he screamed at the workers." *Id.*

The same day Paige filed her petition, the trial court entered an emergency protective order (EPO) in favor of Paige and issued a protective order summons, setting an evidentiary hearing for October 1, 2024. Michael was served by the Jefferson County Sheriff's Department on September 20, 2024. (R. 19-21.) Michael appeared virtually at the hearing without counsel, and the trial court entered the DVO following the hearing. This appeal followed. We develop additional facts and procedural background as follows.

---

[2] Record.

## ANALYSIS

Before addressing Paige's declination to file a brief and the infirmity of the trial court's DVO, we first address Michael's failure to conform his opening brief to our rules.

## APPELLANT'S BRIEFING VIOLATIONS

RAP 32(A)(4) requires an appellant's opening brief to "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." In essence, if an appellant raises five arguments on appeal, his opening brief should contain five preservation statements, or otherwise apprise the Court of when and how those five arguments were raised before the trial court. Michael's brief does not contain a single preservation statement, and it does not request that we undertake palpable error review.

An appellant's brief is also supposed to contain, in the statement of the case, "ample references to the specific location in the record supporting each of the statements contained in the summary" pursuant to RAP 32(A)(3), and in the argument, "ample references to the specific location in the record and citations of authority pertinent to each issue of law" pursuant to RAP 32(A)(4). Michael does not furnish a single reference to the record, and Michael furnishes few citations to

authority (of those citations Michael does furnish, he also fails to format them as prescribed by RAP 31(E)).

With particular respect to our requirement an appellant furnish references to the record, we note Michael asserts in his brief: "No waiver of service or other evidence of completion of proper service is apparent from the docket sheet or pleadings." This is refuted by the written record (R. 19-21), and Michael testified at the hearing: "I was served twice." (V.R.[3] 10/1/24 at 9:16:50 AM.) A failure to furnish references to the record does not mean we will not undertake to verify an appellant's factual representations. Ignoring the record is not effective advocacy.

Michael also included in the appendix of his opening brief a number of police reports relating to past domestic violence incidents involving Paige. These reports were not filed of record below, and "materials and documents not included in the record shall not be introduced or used as exhibits in support of briefs." RAP 32(E)(1)(c). We have declined to review the reports in full, and they play no role in our analysis, as we do not address the merits of Paige's petition.

Our briefing rules are not arbitrary hoops to jump through. Their aim is to facilitate our review. We require preservation statements so we can verify our jurisdiction. We require references to the record so we can understand, locate, and

---

[3] Video Record.

review the basis for a party's factual representations. We require citations to authority, and that those citations be particularly formatted, so we can easily locate and review those authorities a party is relying on. We do not allow parties to supplement the record with new evidence on appeal, as "[o]ur jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court." *Owens v. Commonwealth*, 512 S.W.3d 1, 15 (Ky. App. 2017).

> Pursuant to RAP 10(B):
>
> [T]he failure of a party to substantially comply with the rules is ground for such action as the appellate court deems appropriate, which may include:
>
> (1) A deficiency notice or order directing a party to take specific action,
>
> (2) A show cause order,
>
> (3) Striking of filings, briefs, record or portions thereof,
>
> (4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,
>
> (5) A dismissal of the appeal or denial of the motion for discretionary review, and
>
> (6) Such further remedies as are specified in any applicable rule.

In this instance, we decline to dismiss Michael's appeal, given the obvious infirmity of the trial court's DVO, as we discuss below. We have discussed not just the importance, but the *duty* of counsel to adhere to our briefing rules at length.

*See J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 155 (Ky. App. 2024). By separate order rendered contemporaneously with this Opinion, the Court sanctions Michael's counsel, Alvertis Bishop, Jr., by fining him $250.00 pursuant to the above-cited rule. We decline to fine Bishop, Jr., the maximum amount, despite his substantial departure from our briefing rules, as we have not identified previous instances of Bishop, Jr., flouting our rules.

## APPELLEE'S DECLINATION TO FILE A BRIEF

We now turn to Paige's declination to file a brief. Pursuant to RAP 31(H)(3):

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

In this matter, where the trial court failed to make any findings of record that would support entry of the DVO, we regard Paige's failure to file a brief as a confession of the insufficiency of the trial court's findings.

In *Tipan v. Tipan*, the trial court dismissed a DVO petition without entering a written order, and we held "the trial court erred in failing to perform its mandatory duty of entering written findings of fact and conclusions of law revealing the rationale for its decision." 582 S.W.3d 70, 73 (Ky. App. 2019). We

have previously explained: "A family court is obligated to make written findings of fact showing the rationale for its actions taken under KRS[4] Chapter 403, including DVO cases, even if the rationale may be gleaned from the record." *Thurman v. Thurman*, 560 S.W.3d 884, 887 (Ky. App. 2018). In the instant matter, the DVO entered by the trial court does not include any written findings (R. 24-26), but the trial court did make handwritten docket notations. (R. 27.)

The Kentucky Supreme Court indicated its approval of this practice in *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015) (deeming written findings sufficient where "the court . . . listed on its docket sheet nine specific findings to support its order"). However, in this matter, the trial court's docket notations do not reveal its rationale in determining Paige suffered domestic abuse in August 2024, as alleged in her petition. Instead, the trial court's docket notations relate to allegations Michael committed domestic abuse against Paige's mother, Tia Schadler, a third-party. But the DVO was entered in favor of Paige, not Tia. (R. 24.)

The trial court did indicate in its docket notations it was "adopt[ing] [its] oral findings made on the record." (R. 27.) We have allowed our trial courts to satisfy their fact-finding obligations by incorporating oral findings if "specifically incorporated into a written and properly entered order." *Kindred*

---

[4] Kentucky Revised Statutes.

*Nursing Centers Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010).

However, having reviewed the hearing, we cannot discern any juncture where the

trial court made substantive findings that would support its entry of a DVO based

on Paige's petition, or where the trial court even made specific findings of fact

related to Paige's petition.

This is a case where Paige alleged that, in August 2024, Michael was

"stalking [her] over the phone," and "still continu[ing] to contact [her] through

family and different accounts through social media," but there is not a single

finding of record, written or oral, that Michael contacted or attempted to contact

Paige even once in August 2024, or at any other point. There also is no conclusion

of law that any actions taken by Michael with respect to communicating with Paige

after she asked him to stop was "harassment," a term that is not defined in KRS

Chapter 403, but which is defined in in our criminal code, in part, as "an

intentional course of conduct" that "serves no legitimate purpose." KRS

508.130(1).[5] If Michael did contact Paige repeatedly in August of 2024, even after

she asked him to stop, what did he claim his purpose was? Why did the trial court

find his purpose was not "legitimate," but instead his efforts constituted

---

[5] While "harassment" is not defined in KRS Chapter 403, relating to domestic violence, KRS Chapter 456 utilizes the criminal definition, and we have previously noted "the statute governing how the IPO [Chapter 456] statutes should be interpreted almost perfectly tracks the language of the statute governing how the DVO statutes (Chapter 403) should be interpreted." *Smith v. Doe*, 627 S.W.3d 903, 908 (Ky. 2021).

"harassment"? Having reviewed the hearing, the trial court did briefly review Paige's phone (V.R. 10/1/24 at 9:28:00 AM), but no exhibits, such as screenshots, were placed into the record, and the trial court made no findings, written or oral, regarding what it viewed on Paige's phone.

Our trial courts are placed in an unenviable position in cases such as this, where both parties appeared before the trial court *pro se*. In this matter, the trial court struggled to bring order to the hearing and to elicit relevant testimony, likely stemming from the trial court's failure to order the proceedings as prescribed by our rules. *See* CR[6] 43.02. The result was unguided, scattershot testimony, little if any of which had to do with August 2024 or "[t]he facts and circumstances which constitute the basis for the petition." KRS 403.725(3)(c). However, to avoid additional error on remand, we emphasize a few additional points.

The first is that, in the absence of members of the bar to help steer the ship, the trial court must nonetheless undertake to ensure both parties are afforded "a meaningful opportunity to be heard." *Hawkins v. Jones*, 555 S.W.3d 459, 462 (Ky. App. 2018). CR 52.01, in fact, "requires that the judge engage in at least a good faith effort at fact-finding." *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011). In this matter, the trial court failed to give Michael a meaningful opportunity to be heard, as due process is not satisfied when a petitioner's

---

[6] Kentucky Rules of Civil Procedure.

entitlement to relief is determined "solely on the basis of the contents of the petition." *Rankin v. Criswell*, 277 S.W.3d 621, 625 (Ky. App. 2008).

In this matter, the trial court queried Michael at the outset of the DVO hearing:

> Mr. Snyder, she's saying she just wants short-term protection. Would you agree to keep this IPO [the previously issued EPO] in place for six months? We could schedule you to come back and see it it's okay to just let it expire or dismiss it at that point. This is something that could be expunged from your record, after six months, versus a full-on domestic violence order that would last up to three years.

(V.R. 10/1/24 at 9:15:00 AM.) Michael declined the trial court's "suggestion," citing the adverse impact it could have on his employment, and pointing out that he wanted to get his lawyer involved, asserting his lawyer was in possession of supportive documentary evidence.

The trial court's good faith fact finding mission is all the more indispensable given the "significant long-term consequences for both parties" in DVO cases. *Rankin*, 277 S.W.3d at 625. But here, before the hearing was even underway, based solely on the contents of Paige's petition, the trial court "suggested" a short-term order of protection would be appropriate, betraying a pre-formed belief Paige was entitled to at least some form of protection. The trial court's prejudging of the merits failed its good faith fact finding mission.

-10-

Our second point of emphasis is that the trial court must follow the "best evidence rule." "Essentially, this rule requires a party to introduce the most authentic evidence which is within their power to produce." *Johnson v. Commonwealth*, 231 S.W.3d 800, 805 (Ky. App. 2007). *See* KRE[7] 1002. As applied to the instant case, for example, where Paige has alleged Michael was "stalking [her] over the phone," Paige should furnish screenshots of the contents of her phone into the record, not simply testify as to the contents of her phone. Furnishing exhibits into the record would certainly facilitate review by our appellate courts, should this matter be subject to further appeal.

As another example, Michael testified as to various documentary evidence he could furnish into the record, with the trial court at one point indicating it did not need to review his evidence, citing the "preponderance of evidence" standard in civil matters. (V.R. 10/1/24 at 9:36:15 AM.) To be clear, the standard of persuasion for the fact finder does not impact the admissibility of evidence and is not a proper basis for excluding evidence, particularly where exclusion flies in the face of the "best evidence rule." "All relevant evidence is admissible," unless applicable authority says otherwise. KRE 402. And as we said in *Holt v. Holt*, "a party has a meaningful opportunity to be heard where the trial

---

[7] Kentucky Rules of Evidence.

court *allows each party to present evidence* and give sworn testimony before making a decision."  458 S.W.3d 806, 813 (Ky. App. 2015) (emphasis added).

Here, the trial court queried Michael as to whether he had additional evidence, he indicated that he did, and then the trial court nonetheless indicated it would not review his evidence, citing an improper basis for excluding evidence. That is not consistent with our conception of due process as outlined in our case law.  With due respect to the presiding judge below, when both parties contend they have documentary evidence to support their claims, resolution is not simply a matter of "the standard is very low.  I just have to decide who to believe."  (V.R. 10/1/24 at 9:36:15 AM.)

If the documentary evidence is relevant and admissible, the trial court must at least weigh it in the course of its good faith fact finding mission, not simply ignore it because "the standard is very low."  Ignoring relevant, admissible evidence does not demonstrate the good faith fact finding effort *required* by CR 52.01.  However, a trial court need not acknowledge every piece of evidence in its resultant findings.  *Truman v. Lillard*, 404 S.W.3d 863, 867 (Ky. App. 2012) ("we do not believe a trial court's findings of fact must specifically mention each and every piece of evidence or argument of counsel to pass muster").

This leads us to our final point of emphasis.  Documentary evidence, particularly concerning past allegations of domestic violence, if admissible, may be

particularly important in matters such as this; despite the presiding judge's statement this is simply a matter of "who to believe," Paige's petition implicates our statutes of limitation, our rules of evidence generally excluding evidence of "prior bad acts" (*see* KRE 404(b)), as well as *res judicata* and related doctrines. This is not a simple matter. Paige is not entitled to litigate every event from the entirety of both her and her mother's life (including events Tia testified to predating Paige's birth), and she is not entitled to re-litigate past allegations that have already been adjudicated in Michael's favor. Statutes of limitation, evidentiary rules, and our principles of adjudication do not evaporate when parties appear before the trial court *pro se*.

One example from the DVO hearing that prompts our concern is Michael's testimony that Tia's prior allegations had been "dismissed" and that he had "no domestic violence" on his record. The trial court stated: "I don't think that's the reality . . . the reports aren't reflecting reality." (V.R. 9:35:00 AM.) We cannot discern how the trial court determined past judicial records were infirm or unreflective without reviewing them, or why the trial court believes past adjudications have no bearing on whether Paige or Tia are entitled to continue raising certain allegations.

On remand, the trial court should endeavor to determine the proper scope of the DVO hearing and limit the evidence, and its consideration of that

evidence, appropriately.[8] Ultimately, the trial court's factual findings must be based on substantial evidence, and "[s]ubstantial evidence means evidence of substance and *relevant* consequence having the *fitness* to induce conviction in the minds of reasonable men." *Smyzer v. B. F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971) (emphasis added). Evidence that should be excluded pursuant to our rules definitionally lacks "fitness." Notably, we do not require preservation of sufficiency-of-the-evidence arguments. CR 52.03.[9]

## CONCLUSION

Based on the foregoing, the October 1, 2024 DVO entered by the Jefferson Circuit Court is vacated, and this matter is remanded with instruction to the trial court to conduct an additional hearing to elicit further testimony and documentary evidence regarding "[t]he facts and circumstances which constitute

---

[8] The trial court should be particularly mindful of our jurisprudence regarding the waning relevance of events remote in time. In *Driver v. Commonwealth*, 361 S.W.3d 877, 883 (Ky. 2012), the Kentucky Supreme Court explained "the 404(b) standards are different for a victim in comparison to a third-party," and ruled certain KRE 404(b) evidence at issue in that case inadmissible "pursuant to both the general rule relating to the admission of prior bad acts against third-parties, and the general principles of remoteness described in *Barnes* [*v. Commonwealth*, 794 S.W.2d 165 (Ky. 1990)]." Both the Kentucky Supreme Court and this Court have applied these general principles in the context of domestic violence cases. *See West v. Commonwealth*, No. 2011-SC-000629-MR, 2013 WL 3155835 (Ky. Jun. 20, 2013) and *Johnson v. Fuqua*, No. 2014-CA-000252-ME, 2014 WL 4536346 (Ky. App. Sep. 12, 2014).

[9] Our reversal pursuant to our briefing rules makes it unnecessary to determine whether the trial court committed reversible error by failing to exclude certain KRE 404(b) testimony from Tia and Paige. Instead, we simply emphasize this point, as with others, to avoid such error on remand.

-14-

the basis for the petition," and to thereafter enter an appropriate order, with its findings and conclusions reduced to writing.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEE.

Alvertis W. Bishop, Jr.
Cincinnati, Ohio