**COMMONWEALTH of Kentucky, Appellant,**

v.

**Kathy A. ANDERSON, Appellee.**

No. 95–SC–1057–DG.

Supreme Court of Kentucky.

Nov. 21, 1996.

A.B. Chandler, III, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellant.

Daniel T. Goyette, Jefferson District Public Defender, Frank W. Heft, Jr., Chief Appellate Defender, Jefferson District Public Defender, Louisville, for appellee.

JAMES LEVIN, Special Justice.

This is an appeal from a decision of the Court of Appeals vacating the order of the trial court which found that the appellee, Kathy A. Anderson, had failed to establish she had been a victim of domestic violence at the hands of the man she killed, and therefore was not eligible for an exemption from the parole-eligibility restrictions of the Violent Offender Statute, KRS 439.3401.

Anderson and James Shields, both alcoholics, had been cohabiting in a boardinghouse for approximately one year. As a result of a seizure, Anderson fell and broke her arm. On May 6, 1993, Anderson and Shields had three or four drinks, and Anderson retired to bed. What happened thereafter is a maze of contradictions based solely on the statement of Anderson. She first stated to the police called to the scene that she awoke to find Shields dead on the floor and denied stabbing him or contributing to his death in any way. The following evening, the police again interviewed her. This time, she stated that she had gotten into an argument with Shields and pushed him, causing him to fall on an eight-inch long surgical pin. She let him lie on the floor for about forty-five minutes before calling for help. Based upon this statement and the autopsy report which revealed that Shields's death was a result of two linear abrasions on his left arm, a laceration to the

right side of his face and his left hand, and a puncture wound to both the right and left side of his chest, Anderson was charged with and indicted by the grand jury for capital murder. Shields's blood alcohol concentration was 1.321%.

Anderson pled guilty in exchange for the Commonwealth's offer of fifteen years to an amended charge of first-degree manslaughter, a Class B felony. Under the plea agreement, Anderson was allowed an evidentiary hearing to determine whether she had been a victim of domestic violence or abuse. If so, she would be exempt from the more severe violent offender parole provisions. KRS 439.3401(4). Ordinarily, the violent offender statute would preclude Anderson from consideration for parole until Anderson had served 50% of her sentence; by its own terms, however, the statute does not apply to a "person who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with regard to the offenses involving the death of the victim or serious physical injury to the victim." KRS 439.3401(4).

Anderson claimed the exemption, and the trial court conducted an evidentiary hearing. To support her claim that she had been a victim of domestic violence or abuse, Anderson offered only the expert testimony of Dr. Anna Victoria Wilson, a professor of correctional services at Eastern Kentucky University, who holds a Ph.D. in counseling, psychology and sociology.

Dr. Wilson testified that Anderson told her that on the night that Shields was killed, she was sleeping and Shields grabbed and pulled her broken arm and began striking her around the arm and upper body. He ignored her plea for mercy and blocked the door to prevent her escape. After further imploring Shields to desist, Anderson told the doctor that she picked up an eight-inch surgical pin that lay on her dresser and stabbed Shields one time. He fell to his back and did not get up. She then called a friend.

Dr. Wilson, relying solely upon the information she obtained from Anderson and the court records, testified that Anderson suffered from "battered woman syndrome" as a result of her relationship with Shields, that she was a victim of domestic violence, and, in stabbing Shields, she acted in self defense. Her opinion was based upon Anderson's revelation that she was being abused by Shields on the night of the homicide and would have fled the apartment had Shields not been blocking the doorway and that she stabbed him with the surgical pin to escape further assault.

On cross-examination, the Commonwealth countered by pointing out that Dr. Wilson's testimony was based solely on interviews with Anderson and that Anderson was not a credible person and had manipulated Dr. Wilson with her version of the events that led up to the homicide. Evidence was introduced that Anderson had a criminal record dating back some fifteen years with six convictions, including a felony offense. The Commonwealth also called attention to Anderson's use of an extraordinary string of fourteen different aliases. Although Dr. Wilson was adamant in her belief that Anderson stabbed Shields only because he was beating her, the Commonwealth introduced photographs taken of Anderson showing no signs of having been beaten. Finally, the Commonwealth pointed out that Anderson had given three inconsistent stories about the homicide: first, she simply found Shields dead; second, during an altercation she pushed Shields and he fell upon the surgical pin; and finally, she stabbed him once in an effort to escape harm. In fact, the post-mortem examination indicated Shields had been stabbed six times.

Based upon this evidence, the trial court was skeptical of the facts upon which Dr. Wilson based her conclusions. Since no independent evidence was offered to verify those facts, the trial court ruled that it could not reach a conclusion, based solely upon the unsworn uncorroborated statements of Anderson as relayed by Dr. Wilson, that Anderson was a victim of domestic violence as defined in KRS 403.720.

The Court of Appeals held that the trial court erred by requiring Anderson to prove her allegations by a "preponderance of the evidence" standard, and vacated the trial court order, remanding the case for reconsid-

eration to determine whether Anderson had produced "some credible evidence" or "any relevant evidence" to sufficiently substantiate a claim to the exception under KRS 439.3401(4).

The principal issue raised in this appeal is the standard of proof necessary pursuant to KRS 403.720(1) to establish that a person is a victim of domestic violence and therefore exempt from the requirement of KRS 439.3401(3), the violent offender statute.

KRS 439.3401 provides in relevant part as follows:

(3) A violent offender who has been convicted of a capital offense or Class A felony with a sentence of a term of years or Class B felony who is a violent offender shall not be released on parole until he has served at least fifty percent (50%) of the sentence imposed.

(4) This section shall not apply to a person who has been determined by a court to have been a victim of domestic violence or abuse pursuant to KRS 533.060 with regard to the offenses involving the death of the victim or serious physical injury to the victim. . . .

KRS 533.060(1) provides as follows:

When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of the offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, the person shall not be eligible for probation, shock probation, or conditional discharge, except when the person establishes that the person against whom the weapon was used had previously or was then engaged in an act or acts of domestic violence and abuse as defined in KRS 403.720 against either the person convicted or a family member as defined in KRS 403.720 of the person convicted. If the person convicted claims to be exempt from this statute because that person was the victim of domestic violence and abuse as defined in KRS 403.720, the trial judge shall conduct a hearing and make findings to determine the validity of the claim and applicability of

this exemption. The findings of the court shall be noted in the final judgment.

KRS 403.750(1) discusses court determinations of whether domestic violence has occurred in the context of a petition for an emergency protective order under KRS 403.740. The court in such a proceeding is authorized to act if, following a hearing, "it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred. . . ." KRS 403.750(1). Although emergency protective orders represent a different case, since the legislature identified KRS Chapter 403 as containing the definition to be followed in determining whether domestic violence has occurred, and since that chapter also deals with how such determinations are made, it follows that KRS Chapter 403 provides the appropriate evidentiary standard to be applied when the KRS 439.3402(4) exemption is claimed.

■ The preponderance of the evidence standard set forth in KRS 403.740 is indicative of the legislative intent and should be followed with regard to evidentiary determinations under KRS 439.3401(4). It merely requires that the evidence believed by the fact-finder be sufficient that the defendant was more likely than not to have been a victim of domestic violence.

■ KRS 533.060(1) specifies that the trial judge shall conduct a hearing and make findings. It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another. *King v. McMillan*, 293 Ky. 399, 169 S.W.2d 10 (1943). The trier of fact may believe any witness in whole or in part. *Webb Transfer Lines, Inc. v. Taylor*, Ky., 439 S.W.2d 88, 95 (1968). The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness. *Hayes v. Hayes*, Ky., 357 S.W.2d 863, 866 (1962). Having weighed the evidence in this case, the trial court concluded that Anderson did not establish she was a victim of domestic violence. The trial court's factual finding was correctly based upon a preponderance of evidence standard. The

ruling of the trial court was not clearly erroneous.

For the reasons stated herein, the decision of the Court of Appeals is reversed and the case remanded to the Jefferson Circuit Court with directions to reinstate the order dated February 11, 1994.

All concur.

KING, J., not sitting.