RENDERED: AUGUST 26, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0305-MR

MARK ADAM CAVE                                                    APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 12-CR-00432

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE: Mark Cave, *pro se*, appeals from orders[1] of the Fayette

Circuit Court denying his motion to vacate, set aside, or correct sentence pursuant

to RCr 11.42. After careful review, we affirm.

---

[1] The trial court entered three separate orders to address the numerous ineffective assistance of counsel claims presented by Cave in his initial Kentucky Rules of Criminal Procedure ("RCr") 11.42 motion and numerous supplemental motions that followed.

# I.    Factual and Procedural Background

Following a jury trial, Cave was convicted of wanton murder of his

mother, Sharon Cave Howard; fraudulent use of a credit card; and tampering with

physical evidence.  The jury recommended a total of twenty-five years'

incarceration, and the trial court imposed the recommended sentence.  Further facts

were set forth by the Kentucky Supreme Court in *Cave v. Commonwealth*, No.

2013-SC-000542-MR, 2015 WL 1544451 (Ky. Apr. 2, 2015):

> At the time of her death, Sharon Cave Howard
> (Sharon) was receiving social security disability benefits.
> Those benefits were automatically deposited to an
> account that Sharon accessed with a "Direct Express"
> debit card.  Several days prior to Sharon's death, her son,
> Cave, cancelled that debit card and had a new card issued
> with a new PIN.  On June 6, 2011, Cave killed Sharon
> and hid her body in a trash container.  Following
> Sharon's death, the Social Security Administration
> continued to make deposits to Sharon's account and Cave
> continued to use the debit card.
>
> On December 28, 2011, Sharon's daughter and
> Cave's sister, Tracy, filed a missing person's report, and
> Detective Boles of the Lexington Fayette County Police
> Department began an investigation.  On January 2, 2012,
> a Lexington police officer arrested Cave and charged him
> with shoplifting at a WalMart.  Detective Boles learned
> that Cave had Sharon's debit card, and he conducted
> several interviews of Cave on February 1, 2012.  During
> the course of those interviews, Cave confessed to killing
> Sharon, although he stated he could not remember the
> details, and he led police to Sharon's body.  The grand
> jury indicted Cave for murder and tampering with
> physical evidence and for fraudulent use of a credit card

for charging more than $100 to Sharon's debit card in Fayette County between June 7, 2011 and July 4, 2011.

At trial, the primary issue was whether Cave was suffering from extreme emotional disturbance (EED)[2] at the time he killed Sharon. In support of his claim of EED, Cave presented a substantial amount of evidence regarding his and Sharon's ongoing and long-term use of illegal drugs, and of Sharon's long-term physical and psychological abuse of him, his siblings, and his father. After considering the evidence, the jury rejected the Commonwealth's argument that Cave intentionally killed his mother, finding instead that he did so wantonly.

*Id.* at *1. Our highest court affirmed Cave's conviction and sentence.

On November 21, 2016, Cave filed a *pro se* motion pursuant to RCr 11.42 alleging ineffective assistance of trial counsel. Cave raised five claims, including that counsel failed to formulate a defense and present expert testimony. Cave filed a second motion pursuant to RCr 11.42 on November 28, 2016. The Department of Public Advocacy ("DPA") was appointed to represent Cave; however, Cave soon began filing motions for conflict counsel, and also filed *pro se* supplemental claims to his original RCr 11.42 motion. Appointed counsel filed a

---

[2] "Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986).

supplemental memorandum that focused on Cave's claims that trial counsel failed to present expert testimony that supported Cave's defense of EED. Due to ongoing disagreements between Cave and his post-conviction counsel, the trial court eventually granted Cave's motion for conflict counsel and another attorney was assigned to assist him in his RCr 11.42 motion. New counsel filed supplemental claims to those already filed by Cave.

The trial court scheduled an evidentiary hearing to address only whether trial counsel provided ineffective assistance by failing to call Dr. Eric Drogin as a witness to provide expert testimony regarding Cave's EED defense. Dr. Drogin had performed an evaluation of Cave prior to trial in support of his EED defense. All other issues were decided from the record, and the trial court denied relief to Cave on those issues via an order entered on August 1, 2019. Following the evidentiary hearing, the trial court similarly denied relief to Cave regarding his claim that trial counsel "abandoned" his EED defense by failing to call Dr. Drogin. Cave subsequently filed a motion requesting the trial court to address his remaining claims that trial counsel failed to raise the issue of a "fatal variance" between the indictment and jury instructions and failure to object to jury instructions. The trial court entered an order denying relief to Cave on those issues as well. This appeal followed, and Cave now appears *pro se*. Further facts will be developed as necessary.

## II.    Standard of Review

We review a trial court's denial of an RCr 11.42 motion for abuse of discretion. *Bowling v. Commonwealth*, 981 S.W.2d 545, 548 (Ky. 1998).  To prevail under RCr 11.42, the defendant must show that trial counsel's performance was deficient by demonstrating counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  The defendant must also show that the deficient performance prejudiced the defense by demonstrating that counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The proper standard for attorney performance is that of reasonably effective assistance, and the inquiry must be whether counsel's assistance was reasonable considering all of the circumstances.  *Id.*  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689, 104 S. Ct. at 2065.

Because the trial court conducted an evidentiary hearing on one of the claims in the motion, its findings of fact will not be set aside unless they are clearly erroneous. CR[3] 52.01; *Adams v. Commonwealth*, 424 S.W.2d 849, 851 (Ky. 1968). Findings of fact are not clearly erroneous if supported by substantial evidence. *Black Motor Co. v. Greene*, 385 S.W.2d 954, 956 (Ky. 1964).

### III. Analysis

We begin our analysis by noting that Cave's brief is deficient in several substantive ways. While we acknowledge he is a *pro se* litigant, "that does not exempt him from the rules. He is bound by the same rules of appellate procedure as his opposing counsel and any other party before this court." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). First, Cave's brief is not double-spaced as mandated by CR 76.12(4)(a)(ii). He has no preservation statements and no citations to the paper record as provided in CR 76.12(4)(c)(v). Finally, Cave did not attach the relevant orders of the trial court to his brief as mandated by CR 76.12(4)(c)(vii). The record before us is voluminous and, of seven volumes of record, four volumes pertain only to Cave's RCr 11.42

---

[3] Kentucky Rule of Civil Procedure.

-6-

motion and the various supplements that are now on appeal. As previously noted, the trial court addressed the numerous issues in three separate orders.

Compliance with CR 76.12 is mandatory, and failing to comply with the civil rules is an unnecessary risk appellate advocates should not chance. *Petrie v. Brackett*, 590 S.W.3d 830, 834-35 (Ky. App. 2019) (citing *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010)). "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis*, 328 S.W.3d at 696 (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)).[4] In this instance, we proceed with review due to the serious nature of Cave's conviction, but we caution that such leniency may not be afforded in the future.

Cave makes numerous arguments on appeal. He asserts the trial court erred in denying him relief pursuant to RCr 11.42 because trial counsel (1) abandoned his EED defense at trial; (2) failed to call Dr. Drogin to testify that Cave committed the offenses under EED; (3) failed to object to deficient jury instructions; (4) failed to properly cross-examine the prosecution's witnesses; (5)

---

[4] "[T]he manifest injustice standard of review is reserved only for errors in appellate briefing related to the statement of preservation . . . . [A] review for manifest injustice is an inappropriate sanction for briefing errors that relate only to the formatting rules." *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).

failed to object to the "fatal variance" between the indictment and jury instructions; (6) failed to seek a self-protection jury instruction; and (7) failed to request a hearing and call a mental health expert to demonstrate that Cave was a victim of domestic violence. We disagree with each of Cave's claims.

We address Cave's first and second arguments together as they concern his assertion that trial counsel abandoned the defense of EED during trial and this was shown, at least in part, by counsel's decision not to call Dr. Drogin as an expert witness. Cave's argument that trial counsel abandoned his EED defense is refuted by the record. We again turn to the opinion of our highest court, which provides, in relevant part,

> Cave presented a significant amount of evidence that Sharon had physically and psychologically abused him, his father, and his siblings. Cave also presented evidence that he suffered a great deal following the deaths of his infant son and father several years earlier, and that Sharon had significant psychological problems, which resulted in treatment at an inpatient psychiatric facility in 2009, 2010, and the spring of 2011. During her last admission for treatment, Sharon indicated that she was afraid of Cave and that she did not believe she would be safe if released from the facility.

> Sharon and Cave, who had lived together off and on, were living together during the months preceding Sharon's death in an apartment Sharon rented and, after being evicted, in a friend's trailer. Both Sharon and Cave used and abused a number of drugs, including Sharon's prescription Klonopin and "bath salts."

Cave testified that, on June 3, 2011, fearing that Sharon would use her debit card to purchase illegal drugs, he cancelled the card and requested a new one with a different PIN. Cave admitted that he then spent a sleepless weekend fueled by bath salts and Sharon's Klonopin.

The afternoon of June 6, 2011, when Cave returned home from work, Sharon began berating him, calling him a "piece of shit," "a bad father," and "nothing." She told Cave that he deserved to suffer from his son's death and that he was responsible for the stroke his father suffered several years before his death. Cave testified that, in order to escape Sharon's abuse, he took more Klonopin and went to his room to sleep, telling Sharon that he did not care if he woke up. Sharon continued to "rant and rave" and, at 3:00 a.m., began beating on Cave's bedroom door, "yelling more abuse." Cave testified that his memory of what followed was unclear; however, he remembered leaving the trailer and that Sharon followed him and hit him. He also remembered hitting her and trying to put her body in a dumpster, but he denied stabbing her and Cave could not remember putting Sharon's body in a different trash container.

. . . .

Based on the evidence of a lifetime of abuse coupled with the abuse he suffered on June 6, 2011, Cave moved the trial court to direct the jury to find that he was acting under EED when he killed Sharon.

*Cave*, 2015 WL 1544451, at *2.

Trial counsel at no time "abandoned" Cave's claim of EED. Cave testified for over three hours regarding the abuse he suffered at Sharon's hands throughout his lifetime, up to and including the night of the murder. His brother

and sister also testified regarding Sharon's abuse in the family home. Trial counsel moved the trial court for a directed verdict regarding the EED claim and argued EED in closing.

While it is true that trial counsel did not call Dr. Drogin as an expert witness regarding EED, both trial counsel and co-counsel testified during the evidentiary hearing that this was a strategic choice. Cave had been evaluated by the Kentucky Correctional Psychiatric Center ("KCPC") once it was known he would be presenting a mental health defense. Trial counsel was concerned that, if Dr. Drogin was called, the Commonwealth would call the examining physician from KCPC in rebuttal and, as the trial court pointed out in its order, "KCPC's testimony would be more harmful than Dr. Drogin's testimony would be helpful." We agree. Further, trial counsel testified he was worried how the EED defense would hold up under cross-examination of Dr. Drogin due to Cave's numerous statements that he did not remember details from the night of the murder. Trial counsel explained the defense strategy was to latch onto the jury's emotions by presenting evidence that Sharon was a dangerous and abusive woman, hopefully garnering more sympathy for Cave and less for Sharon. We agree with the trial court that Cave did not overcome the presumption that trial counsel's decision not to call Dr. Drogin was anything less than sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

-10-

Cave next argues that trial counsel provided ineffective assistance by failing to seek an instruction that EED does not apply to wanton murder. We disagree. Jury Instruction No. 3 read as follows:

COUNT 1:  MURDER

You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county during the period between June 1, 2011 and June 7, 2011 and before the finding of the Indictment herein, he killed Sharon Howard by striking her in the head and/or neck with an unknown instrument;

**AND**

B.  That in so doing:

i.  He caused the death of Sharon Howard intentionally and not while acting under the influence of extreme emotional disturbance;[5]

**OR**

ii.  He was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Sharon Howard under circumstances manifesting an

---

[5] EED was defined in Jury Instruction No. 2.

-11-

> extreme indifference to human
> life.

(Emphasis in original.)

The face of the jury instruction correctly provided that EED does not apply to wanton murder as shown by the bold face "OR" between Instruction No. 3B(i) and (ii). Trial counsel did object to inclusion of a wanton murder instruction both before and during trial, and the trial court denied his motions. Cave argues the jury was obviously confused regarding the unanimous verdict form under Instruction No. 7 based on a question submitted during deliberations. We disagree. Instruction No. 7 correctly distinguished between all possible verdicts for Count 1 included in the prior instructions, including those provided in Instruction No. 3. We discern no error.

Cave next argues trial counsel provided ineffective assistance because he failed to cross-examine two of the prosecution's witnesses, Dr. Emily Craig, a forensic anthropologist, and Dr. Victoria Graham, a state medical examiner, regarding whether they believed he intentionally killed Sharon. Cave's argument is without merit. He provides no basis in law or fact for his assertion that a forensic anthropologist or the state medical examiner could testify regarding whether he intentionally killed Sharon. As expert witnesses, their testimony was limited to the physical injuries sustained by Sharon as discernable from her decomposed body. In fact, Dr. Craig refused to answer any questions regarding

soft tissue injuries in her testimony and insisted her testimony was limited specifically to the bones of Sharon's head and neck. It defies logic that Dr. Craig would opine regarding Cave's intent when she would not testify to other injuries sustained by Sharon outside of those evident from her recovered bones even though she assisted the state medical examiner in the autopsy. Finally, the jury did not find that Cave intentionally murdered Sharon; rather, that he did so wantonly. It is unclear what Cave believes could have been gained from *any* testimony pertaining to intent when the jury did not find he intentionally killed Sharon. Cave's argument fails to demonstrate either deficient performance by trial counsel or resulting prejudice in this regard.

Cave next argues that trial counsel failed to object to the jury instruction of wanton murder, which Caves claims was a "fatal variance" from the murder charge contained in the indictment. Cave claims he was only ever charged with intentional murder. We disagree. The charge in the indictment read

> COUNT 1: Between the 1st day of June and the 7th day of June, 2011, in Fayette County, Kentucky, the above named Defendant committed the offense of murder, when he struck Sharon Howard in the head and/or neck with an unknown instrument(s), thereby causing her death[.]

"An indictment is sufficient if it fairly informs the accused of the nature of the charged crime[.]" *Thomas v. Commonwealth*, 931 S.W.2d 446, 449 (Ky. 1996). The indictment put Cave on notice that he was charged with murder

under KRS[6] 507.020.  Under the statute, intentional murder and wanton murder are the same offense.  Therefore, there was no "fatal variance" between the indictment and the jury instruction.  *See Hatcher v. Commonwealth*, 310 S.W.3d 691, 696 (Ky. App. 2010).  Moreover, Cave's claim is refuted by the record.  On May 14, 2013, trial counsel filed a pre-trial motion to exclude an instruction for wanton murder.  His motion was denied.  At trial, counsel again objected to a wanton murder instruction, and his objection was overruled.  On appeal, the Kentucky Supreme Court ruled that a wanton murder instruction was appropriate.  *See Cave*, 2015 WL 1544451, at *3.  Cave's argument must fail.

Cave next argues trial counsel provided ineffective assistance by failing to seek a self-protection instruction.  We disagree.  Both counsel and co-counsel testified at the evidentiary hearing that their trial strategy was to put on a defense centered around EED.  We also agree with the Commonwealth that there was no evidence presented that Cave killed Sharon in self-defense.  In fact, Cave remembered very few details from the night of the murder aside from taking copious amounts of Klonopin and "bath salts," and Sharon banging at his door and berating him.  The decision to not request a self-protection instruction was a strategic choice by counsel.  *See, e.g.*, *Martin v. Commonwealth*, 409 S.W.3d 340, 345 (Ky. 2013).

---

[6] Kentucky Revised Statutes.

-14-

For his final argument, Cave contends trial counsel failed to request a hearing and call a mental health expert regarding Cave being a victim of domestic violence. A finding that Cave was a victim of domestic violence would mean he could become eligible for parole after serving 20% of his sentence, as opposed to 85%. This argument must fail for two reasons. First, it was addressed by the Kentucky Supreme Court on direct appeal. "It is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon an appeal considered by this court." *Thacker v. Commonwealth,* 476 S.W.2d 838, 839 (Ky. 1972). To wit,

> Cave now asks this Court to find that he was, as a matter of law, a victim of domestic violence or, lacking such a finding, to remand this matter to the trial court with instructions to hold an evidentiary hearing. Cave is correct that there was overwhelming evidence that he was the victim of domestic violence. However, as the trial court found, there must be some connection between that domestic violence and the crime. *Commonwealth v. Vincent*, 70 S.W.3d 422, 425 (Ky. 2002) ("[A] prior history of domestic violence between a violent crime victim and the criminal defendant who perpetrated the violent offense does not, in and of itself, make the defendant eligible for the parole exemption of KRS 439.3401(5).") When determining if a defendant was a victim of domestic violence the trial court "may take into consideration all the circumstances of the case, including the credibility of the witness." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). If the court's finding is supported by "a preponderance of the

evidence," we will not disturb it unless the court's determination was "clearly erroneous." *Id.* at 278-79.

Here, although there was evidence of significant and longstanding domestic violence by Sharon against Cave, there was also significant evidence that Cave and Sharon went on binges abusing numerous drugs. Furthermore, there was evidence that Cave had changed the PIN to Sharon's debit card several days before he killed her. That evidence was sufficient to support the trial court's finding that there was no connection between domestic violence and Sharon's murder. Furthermore, Cave has not indicated what additional evidence could or would be produced at an evidentiary hearing. Therefore, we discern no error in the trial court's finding that Cave was not a victim of domestic violence for the purpose of reducing his parole eligibility.

*Cave*, 2015 WL 1544451, at *10-11.

Cave's claim is also refuted by the record before us. As acknowledged by our highest Court, trial counsel did in fact file a motion to find Cave a victim of domestic violence under KRS 439.3401(5). *Id.* at *10.

## IV.  Conclusion

For the foregoing reasons, the orders of the Fayette Circuit Court denying relief to Cave pursuant to RCr 11.42 are affirmed.

ALL CONCUR.

-16-

BRIEFS FOR APPELLANT:

BRIEF FOR APPELLEE:

Mark Cave, *pro se*
Burgin, Kentucky

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky