RENDERED: JUNE 23, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0620-ME

AMANDA HAVILL                                  APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
FAMILY DIVISION THREE (3)
HONORABLE LORI N. GOODWIN, JUDGE
ACTION NO. 11-D-502715-006

JEFFERSON NEAL                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

EASTON, JUDGE: Appellant, Amanda Havill ("Amanda") appeals from the Jefferson Family Court's denial of her request to extend a Domestic Violence Order ("DVO") against the Appellee, Jefferson Neal ("Jeff"). Amanda argues the family court abused its discretion by declining to extend the DVO and that it erred when it failed to make sufficient findings of fact. We conclude the family court

did not abuse its discretion in these circumstances and that it belatedly made the requisite findings of fact to support its decision. Therefore, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Amanda has a long history of petitions against Jeff about domestic violence. Amanda and Jeff were never married but cohabitated for a while. They have one daughter ("Child"), now aged 12. This appeal concerns the sixth "trailer" or subfile, one for each petition filed by Amanda. While we were not provided the entire record, we do have relevant information about the previous filings.

Amanda filed the first petition for an Emergency Protective Order ("EPO") on October 9, 2011, when the Child was one year of age. The court granted the EPO the same day. This case was dismissed eight days later by agreement. Amanda filed the second petition a year later, on October 19, 2012, and a second EPO was granted. This petition was also dismissed by agreement one week later, on October 26, 2012.

Amanda filed a third petition on October 6, 2014. In this case, a Domestic Violence Order was entered on October 20, 2014, and remained in effect until April 11, 2016. Amanda filed petition number four on November 26, 2016. This case was dismissed on January 9, 2017, by agreement. The fifth petition was filed on August 26, 2020. The hearing for a DVO was continued multiple times,

and the EPO expired per the statutory timeframe. KRS[1] 403.740(6). The latest petition was filed by Amanda on October 12, 2021. It is the result of this sixth petition which is before this Court.

The facts alleged in the petition for trailers number five and six are identical. Amanda alleges that Jeff has perpetuated a repeated pattern of abuse upon her for over ten years. She alleges she has suffered black eyes, a broken nose, has been spit on, and has been verbally and mentally abused in the presence of the Child. She alleges Jeff has threatened to kill her on multiple occasions. She writes in the petition she possesses a recorded statement of Jeff stating he wishes someone would kill her. She claims he owns multiple firearms and uses loaded guns as intimidation.

In the sixth petition, Amanda adds that an EPO was granted in August 2020. She further alleges Jeff's counsel purposefully delayed the hearing so that the EPO expired without her knowledge. She claims nothing has changed since that time and she is still afraid of him. Another EPO was granted in Amanda's favor on October 12, 2021, based on the repeated allegations in petition six. Several continuances occurred for various reasons, and the hearing for determination of a DVO was held on February 14, 2022.

---

[1] Kentucky Revised Statutes.

While much of the parties' testimony was conflicting, the parties agreed that the primary allegation in the fifth and sixth petitions involve a telephone conversation that occurred on August 24, 2020. During this conversation, the parties argued about their Child's school uniforms. Amanda recorded this phone conversation without Jeff's knowledge or consent. At some point during the call, Jeff made statements to the effect of wishing someone would kill Amanda.

Jeff claims these statements were made to a third party who was present with him at his residence. Jeff believed the phone conversation with Amanda was concluded at the time he made this statement, and he thought he had ended the call. Amanda argues that Jeff made these statements during their conversation and that he intended for her to hear him.

Jeff tells a different story, which offers a reason for the sixth petition other than any actual fear Amanda may have of him. Jeff claims that in June 2021, he filed a motion to modify his parenting schedule in the circuit court custody action. A hearing date was scheduled for December 2021. Amanda's deposition was scheduled for mid-October 2021. Amanda's new counsel (who had recently been substituted for her previous counsel) emailed Jeff's counsel to advise that Jeff could not be present during Amanda's deposition because of an EPO.

On October 12, 2021, Jeff's counsel responded and informed Amanda's counsel that the EPO had expired, and he indicated Jeff would be present at Amanda's deposition. It was on this date Amanda filed her sixth petition, and another EPO was granted. Due to the EPO, neither Amanda's deposition nor the December hearing date took place. Jeff alleges Amanda filed the EPO as a stall tactic to continue to keep Jeff away from the Child.

During the hearing on the latest petition, Amanda testified to the allegations in her petition. She spoke about having black eyes and having her teeth cracked by being punched in the mouth by Jeff. She claims their Child was always present during these incidents. Amanda alleges she's witnessed Jeff do cocaine and drink excessively.

Amanda admits she agreed to convert three of her prior EPO's into No Unlawful Contact Orders; however, she claimed they were not effective. Amanda also admitted she contacted Jeff during a period when the prior DVO was in effect because she was afraid to leave their Child alone with him, as the Child was not covered by the prior DVO. Amanda testified that, eventually, Jeff's parenting time with the Child was required to be supervised in the separate custody action.

Amanda then testified about the phone call of August 24, 2020. She claims she called Jeff to discuss the Child's school uniforms. Their delivery was delayed, so she indicated to Jeff that she had purchased substitute uniforms the

Child could wear to school for the first day. Amanda testified Jeff became very angry and began yelling at her. He called her names and made a statement that he wished someone would kill her.

She recorded the phone call, and Amanda's counsel asked to play it for the court. Jeff's counsel objected to the recording. He claims he had not been provided it and had never heard it. At this point, the family court recessed for Jeff and his counsel to listen to the recording.

When the parties returned, they informed the court they had reached an agreement for yet another No Unlawful Contact Order. Before the terms of the proposed order could be put fully on the record, Amanda changed her mind and claimed she didn't understand the agreement. She stated she did not want to dismiss the EPO petition in exchange for a No Unlawful Contact Order. The court then set another date to conclude the hearing.

On April 11, 2022, the family court heard a motion from Amanda to extend the EPO, as it otherwise would expire that day. The family court stated it did not have the authority to extend the EPO because of the six-month limitation, but it agreed to grant Amanda a very short-term and limited DVO. The DVO would only restrain Jeff from having contact with Amanda, not the child, and it was only to last until the next hearing date. The family court stated the following hearing then would be a hearing to extend the DVO.

On May 2, 2022, the family court concluded the hearing. Over Jeff's objection, Amanda was allowed to play the recording of the phone call. The family court stated the recording was very difficult to understand, and we agree. It was impossible to understand the majority of what Jeff said during the recorded phone call.

Jeff pointed out the relevant statement in the phone call was part of a conversation between Jeff and a third party, not between Jeff and Amanda. He argued it was a violation of Kentucky's eavesdropping statute[2] to record that portion of the conversation. He argued the family court should not consider any part of the conversation that occurred after Jeff and Amanda both believed their conversation to be concluded. Jeff testified he had in Bluetooth headphones during the phone conversation, and he thought he had pushed the button to end the phone call with Amanda prior to making the statement to a third person about wishing someone would kill her.

Jeff argued Amanda knew their conversation was concluded when the statement was made. He entered a record of text messages between Jeff and Amanda that were exchanged immediately after the phone conversation. Jeff specifically references a text Amanda sent to Jeff on August 24, 2020, at 9:22 p.m.,

---

[2] KRS 526.020.

which read "Wow/ I heard your conversation with JD-Are you too intoxicated to hang up your phone when our conversation was over??"[3]

The family court declined to grant the extension of the DVO. The family court judge stated that but for Amanda having recorded a conversation with a third party without Jeff's knowledge, she would have no personal knowledge of his statements. The family court found that Amanda's text messages to Jeff acknowledged their conversation was concluded. The family court stated that while it does not dispute domestic violence has occurred in the past, Amanda's petition references no recent allegations of abuse, only this statement directed to a third party. While the family court ruled orally from the bench, it did not issue any written order until February 14, 2023, after orders from this Court to do so.

**STANDARD OF REVIEW**

A review of a trial court's decision regarding an entry of an order of protection is limited to "whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018). A trial court's findings of fact are not clearly erroneous if

---

[3] Respondent's Exhibit 1, Page 26.

supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## ANALYSIS

Amanda argues the family court committed two errors. First, she argues the family court abused its discretion in declining to extend the DVO. Second, she claims the family court erred when it failed to make sufficient written findings of fact.

Domestic violence orders are governed by KRS Chapter 403. To enter a domestic violence order, a trial court is required to find by a preponderance of the evidence that domestic violence has occurred and is likely to occur again. KRS 403.740. "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn v. Thacker*, 546 S.W.3d at 580. "The definition of domestic violence and abuse, found in KRS 403.720(1), includes 'physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members.'" *Abdul-Rahman v. Peterson*, 338 S.W.3d 823, 825 (Ky. App. 2011).

Amanda first argues the family court abused its discretion because it based its ruling on the finding that had Amanda not recorded a conversation to

which she was not a party, she would not have any personal knowledge of Jeff's threat. As it turns out, the propriety of Amanda's recording of the conversation is not decisive in our review. Amanda testified as to Jeff's statements, and Jeff did not deny making those statements. The family court allowed the recording to be played, although as previously stated, most of Jeff's side of the conversation was so muffled it was incoherent. Even if Amanda had not recorded the conversation, she still heard Jeff's statement, which she perceived as a threat.

We must apply the wording of the statute which speaks in terms of "infliction of fear of imminent physical injury." The family court could have found Jeff's statement, considering the history of these parties, equated to a threat adequate to make a finding of domestic violence, but the family court was not required to do so in these circumstances. By contrast, in *Williford v. Williford*, 583 S.W.3d 424 (Ky. App. 2019), the petitioner overheard several threats with an actual plan to kill the petitioner: "I'm going to go in there and get him in an argument and blow his head off[.]" *Id*. at 426.

With that being said, the family court acted within its discretion to deny the extension with a finding that Jeff had not inflicted fear of injury on Amanda since Jeff did not direct the statement to Amanda, and the statement did not express any plan beyond a thoughtless and flippant general death wish, which is too often stated when formerly intimate persons break up. While Amanda

testified that Jeff made additional statements to her during their telephone conversation that were threatening in nature, Jeff testified his only statement in that manner was to the third party with him in the room. The family court's determination of which party's testimony to believe was not an abuse of discretion. "The family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented." *Id*. at 429.

"A court may enter a DVO 'if it finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur . . . .'" *Bissell v. Baumbardner*, 236 S.W.3d 24, 29 (Ky. App. 2007) (citing KRS 403.740(1)). The family court did not find that an act of domestic violence had occurred in this instance. While the family court acknowledged that acts of violence occurred in the past, it did not find the allegations in the petition met the evidentiary standard.

A family court is not required to disregard the history of the case or of the parties. *See Baird v. Baird*, 234 S.W.3d 385, 388 (Ky. App. 2007). As previously discussed, this is the sixth domestic violence petition filed in this action, filed over a span of ten years. The parties also have a corresponding custody action regarding their minor child. The family court reviewed the multiple prior agreements to convert EPOs into No Unlawful Contact Orders, the agreements to continue, and the agreements to dismiss previous EPOs. The family court in this

instance looked at the totality of the circumstances to make its finding that an act of domestic violence had not occurred. The denial of the extension of the DVO was not an abuse of discretion.

Amanda further argues the family court failed to make sufficient written findings of fact. "A family court is obligated to make written findings of fact showing the rationale for its actions taken under KRS Chapter 403, including DVO cases, even if the rationale may be gleaned from the record." *Thurman v. Thurman*, 560 S.W.3d 884, 887 (Ky. App. 2018). This includes cases where a family court denies the petition for a DVO. *Hall v. Smith*, 599 S.W.3d 451, 455 (Ky. App. 2020). However, "it would seem unduly burdensome and unnecessary for a court to make findings of fact that establish a non-finding of necessary facts." *Id.* This Court in *Hall* determined that checking a particular box on AOC form 275.3 in a DVO case where the trial court declined to issue a DVO would meet the requirement of written factual findings. *Id.*

If checking the box on the standardized form is adequate fact-finding to affirm the denial of the issuance of a domestic violence order, the order issued by the family court in this instance is clearly sufficient. While the family court's order was delayed, it did include written findings that it did not find by a preponderance of the evidence that an act of domestic violence had occurred.

When reviewing an order regarding the issuance of an order of

protection, "the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008). We give great deference to the trial courts as the finders of fact. "It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). "The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness." *Id.*

## CONCLUSION

The Jefferson Family Court's findings of fact are supported by the evidence and are not clearly erroneous. The Jefferson Family Court acted within its discretion. For the foregoing reasons, we affirm the ruling of the Jefferson Family Court.

LAMBERT, JUDGE, CONCURS.

JONES, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEFS FOR APPELLANT:

Allison S. Russell
Shanna R. Ballinger
Louisville, Kentucky

BRIEF FOR APPELLEE:

B. Mark Mulloy
Louisville, Kentucky