RENDERED:  JANUARY 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1089-ME

DAMARCUS CHILDS                                                APPELLANT

v.                    APPEAL FROM JEFFERSON CIRCUIT COURT
FAMILY DIVISION THREE (3)
HONORABLE LORI N. GOODWIN, JUDGE
ACTION NO. 16-D-500389-007

BRITTANY HAMMONDS                                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND KAREM, JUDGES.

EASTON, JUDGE:  Appellant Damarcus Childs ("Damarcus") appeals from the

Jefferson Family Court's issuance of a Domestic Violence Order ("DVO") against

him on behalf of Appellee Brittany Hammonds ("Brittany").  Damarcus argues the

family court erred because there was no basis for its finding that domestic violence

occurred and is likely to occur again.  He further argues the family court erred by

allowing a Friend of the Court ("FOC"), who had been appointed in the parties' separate custody case, to testify during the DVO hearing. We conclude the family court did not abuse its discretion, and its findings of fact were not clearly erroneous. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

The parties have never been married, but they share two minor children. They have been in a so-called "on-again-off-again" relationship for approximately ten years, but they are currently not together. They each have their own residence, with Brittany residing in Jeffersonville, Indiana, while Damarcus lives in Louisville.

This is the seventh domestic violence petition Brittany has filed against Damarcus. Brittany filed this current petition in July 2024, requesting protection for herself and the parties' children. An Emergency Protective Order ("EPO") was initially granted. After a hearing on August 5, 2024, in which the children's guardian *ad litem* ("GAL") testified, the family court dismissed the Petition as to the children. That decision was not appealed. The DVO hearing regarding Brittany took place on August 12, 2024.

At the hearing, Brittany testified that domestic violence began soon after the parties began dating in 2014. She stated Damarcus pushed, shoved, and hit her. She told the family court about a sexual assault that had occurred in

November of 2023. She testified she went to the University of Louisville Hospital to have a rape kit performed. Brittany also stated she filed a police report with the Jeffersonville police. No documentation of the rape kit or police report were formally introduced into evidence, but Brittany's counsel indicated she was in possession of that documentation. Brittany claimed Damarcus has threatened her many times over the years of their relationship, that he was emotionally abusive, and he used the children against her. She testified she usually did what he wanted to keep the peace.

In addition to her testimony, Brittany called James Murphy ("Murphy") to testify. Murphy is the FOC who was appointed in the parties' custody action. Murphy testified that Brittany confided to him that Damarcus had sexually assaulted her the previous fall. Brittany "begged" him not to disclose this information to anyone, and he reluctantly agreed. Murphy told the family court he believed Brittany was genuinely afraid of Damarcus. Damarcus objected to Murphy's testimony, as he believed none of this information related to the children or the custody action for which he was appointed as an FOC.

Damarcus testified on his own behalf. He categorically denied all of Brittany's allegations. He stated "not one bit" of her testimony was true. He claimed her only purpose in filing for a DVO is to prevent him from having timesharing with their children. He asserted that Brittany was simply not credible.

-3-

The family court issued a DVO in favor of Brittany against Damarcus, finding Brittany's testimony to be credible. This appeal follows.

## STANDARD OF REVIEW

A review of a trial court's decision regarding an entry of an order of protection is limited to "whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010). Likewise, admissibility of evidence is reviewed for abuse of discretion. *Kentucky Guardianship Administrators, LLC v. Baptist Healthcare Sys., Inc.*, 635 S.W.3d 14, 20 (Ky. 2021). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018). A trial court's findings of fact are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## ANALYSIS

Damarcus argues the family court erred in its issuance of a DVO on Brittany's behalf. He argues first that Brittany failed to present sufficient evidence for the court to find that domestic violence had occurred and may again occur. He further argues that the family court abused its discretion in permitting FOC Murphy to testify on Brittany's behalf.

-4-

Domestic violence orders are governed by KRS[1] Chapter 403. In order to enter a Domestic Violence Order, a trial court is required to find by a preponderance of the evidence that domestic violence has occurred and is likely to occur again. KRS 403.740. "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn v. Thacker*, *supra*, at 580. "The definition of domestic violence and abuse, found in KRS 403.720(1) [now KRS 403.720(2)], includes 'physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members.'" *Abdur-Rahman v. Peterson*, 338 S.W.3d 823, 825 (Ky. App. 2011).

Damarcus argues that there is no evidence of a physical injury, an imminent threat of harm, past or present threat of violence or abuse, or that domestic violence may occur in the future. He also claims Brittany never testified to an injury. We disagree.

While Brittany's testimony was not as clear as it might have been, it is clear that Brittany alleged Damarcus raped her. Sexual abuse is an explicit example of domestic violence listed in KRS 403.720(2). While Damarcus denied that accusation, the family court believed Brittany. Damarcus made much of the

---

[1] Kentucky Revised Statutes.

fact that Brittany never expressly used the term "rape" in her testimony, and he claims any sexual contact between them was consensual. But Brittany stated multiple times in her testimony that, on this occasion, she said "no." It is within the circuit court's purview to weigh the credibility of the witnesses and choose which ones to believe. *Baird v. Baird*, 234 S.W.3d 385, 388 (Ky. App. 2007).

Damarcus further takes issue with the family court's finding that domestic violence may occur again. While he argues that Brittany's only allegation of domestic violence was the sexual assault in November of 2023, Brittany actually testified that domestic violence had been occurring for almost ten years. She spoke of incidents where Damarcus shoved or pushed her, where he threatened her with a gun, and threatened to take the children away from her. It is not unreasonable for the family court to find that future domestic violence may occur when Brittany testified to a pattern that has occurred for several years.

Furthermore, Brittany testified that she was afraid of Damarcus. Again, this was the seventh DVO petition Brittany has filed against Damarcus. While Damarcus claims all the previous petitions were meritless and ultimately dismissed, that is not entirely accurate. Brittany's fifth petition, filed in June 2018, led to the issuance of a DVO for a period of one year. A family court is allowed to consider such history of the parties when considering the case now presented. *Id.*

When reviewing the issuance of a Domestic Violence Order, "the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008). We give great deference to the trial courts as the finders of fact. "It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). "The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness[es]." *Id.* We do not believe the family court abused its discretion in its issuance of a DVO in this instance.

Damarcus's second contention of error is that the family court should not have permitted FOC Murphy to testify. Damarcus claims Murphy's testimony was impermissible "vouching" testimony, as Murphy testified he believed Brittany's fear of Damarcus to be genuine.

Brittany contends Murphy's testimony was not inadmissible hearsay for two reasons. First, she cites *Greene v. Boyd*, 603 S.W.3d 231, 240 (Ky. 2020), which illustrates that Kentucky law allows FOCs to testify about their opinions of the parties and about what the parties have told them, so long as the parties are allowed to challenge the FOC's sources. Next, Brittany states Murphy's testimony

is allowed under KRE[2] 801A(a)(2). We determine Brittany to be correct for the latter reason, but not the former.

The statute governing FOCs is KRS 403.300, under the subcategory of "Custody." While "Domestic Violence and Abuse" and "Custody" both fall under the umbrella of Chapter 403: Dissolution of Marriage; Child Custody, they are separate subcategories. The statute begins "In contested custody proceedings . . . ." FOC Murphy was appointed in the parties' custody action. While the parties are the same in both the custody action and this DVO action, the purpose of the actions is different. Brittany is correct that any hearsay statements in FOC Murphy's report would be admissible under *Greene* in the parties' custody action, but it does not necessarily follow that those statements are also similarly admissible in the DVO action.

Even so, an FOC may still have relevant evidence to offer in a DVO hearing. KRE 801A(a)(2) states:

> Prior statements of witnesses. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is:
>
> . . .

---

[2] Kentucky Rules of Evidence.

> (2) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

Damarcus's entire defense in this matter was to challenge Brittany's credibility and claim her allegations were fabricated. This attack on Brittany's credibility began during Damarcus's cross-examination of her. This was prior to Brittany calling FOC Murphy to testify.

> [A] witness's prior consistent statements that would otherwise be hearsay are not excluded by the hearsay rule, and do not constitute improper bolstering, when offered to rebut an express or implied charge against the declarant of *recent* fabrication or improper influence or motive. This hearsay exception applies generally to statements the declarant made *pre-dating* their supposed motive to fabricate their sworn testimony. Likewise, a witness's prior consistent statements made "post-motive" are naturally not barred by the hearsay rule when they do not constitute hearsay – namely when offered primarily for rehabilitative, not substantive purposes.

*Riggle v. Commonwealth*, 686 S.W.3d 105, 114 (Ky. 2023) (emphasis in original) (internal quotation marks and citations omitted).

Brittany made her disclosure to FOC Murphy in the fall of 2023, more than six months prior to filing the current DVO petition. Thus, this statement was arguably made "pre-motive" to fabricate Brittany's most recent allegation, and it is allowable under KRE 801A(a)(2). FOC Murphy possessed relevant evidence. He

-9-

could comment on his observations of Brittany's fear. It was not an abuse of discretion to allow FOC Murphy to testify in these circumstances.

## CONCLUSION

The Jefferson Family Court's findings of fact are supported by the evidence and are not clearly erroneous. The Jefferson Family Court acted within its discretion. We affirm the ruling of the Jefferson Family Court.


ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Callie Walton                                          Ethan Chase
Louisville, Kentucky                              Juliana H. Reczek
                                                             Louisville, Kentucky